861 F.2d 719
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Arnold BENTLEY, Petitioner,
v.
RAILROAD RETIREMENT BOARD, Respondent.
 No. 88-3095.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1988.
 
 Before KEITH, RALPH B. GUY, Jr. and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Petitioner appeals the Railroad Retirement Board's decision denying benefits for disability under the Railroad Retirement Act, 45 U.S.C. Sec. 231 et seq. (1986) and the Social Security Act, 42 U.S.C. Sec. 301 et seq. (1983). We affirm.
 
 I.
 
 2
 Petitioner Arnold Bentley was born on January 10, 1931. He has a fifth grade education. He worked as a railroad machinist from August 1965 to January 1979, as a service station attendant from September 1978 to January 1980, and as a produce handler from March 1980 to November 1980. He quit work on November 15, 1980 as a result of emphysema, hypertension, and heartburn.
 
 
 3
 Petitioner was examined by Dr. Colletti on a bi-monthly basis from July 29, 1983 to December 12, 1983. Dr. Colletti diagnosed petitioner as having chronic obstructive lung disease with bulous emphysema and found that petitioner had been blind in his right eye since an auto accident in 1968. Dr. Colletti did not report a finding as to the severity of petitioner's lung problem.
 
 
 4
 On February 27, 1984, Dr. Thyagarajan examined petitioner at the request of the Railroad Retirement Board. He found petitioner had a normal range of motion in his joints, including his wrist, that his vision was 20/15 in both eyes with corrective lenses, and that he had "emphysema--chronic obstructive pulmonary disease, moderate." As part of Dr. Thyagarajan's examination, he sent petitioner to Dr. Gift, a radiologist, for x-rays. Dr. Gift found that x-rays of petitioner's lumbosacral spine revealed a "[r]ather marked osteoporosis and diffuse osteoarthritic changes lumbar spine." Dr. Gift also took x-rays of claimant's right hand and wrist, and found "[m]ild to moderate diffuse osteoarthritic changes of the right wrist and hand." Dr. Butt examined petitioner on August 8, 1984 for the Board. He too found chronic obstructive pulmonary disease, and stated that pulmonary function studies would be necessary to determine the severity. Petitioner was seen by Dr. Patten on February 12, 1986. Dr. Patten diagnosed "probable severe COPD [chronic obstructive pulmonary disease], with features of both emphysema and chronic bronchitis." The Appeals Referee found that claimant had the following impairments: "chronic obstructive pulmonary disease, reduced vision in his right eye subsequent to an auto accident, mild to early moderate diffuse osteoarthritic changes of right hand and wrist subsequent to a fall, moderate reflux esophagitis with hiatal hernia." The Appeals Referee found that because of his impairments petitioner becomes easily tired and must avoid extremes in temperature, as well as dust, smoke, fumes, or other irritants. The referee concluded that the petitioner retains a residual functional capacity for a restricted range of light work.
 
 
 5
 At the hearing, a vocational expert testified that petitioner's past work as a railroad machinist was classified as heavy and skilled. His past work as a gas station attendant was light and semi-skilled. His past work as a produce handler was medium and semi-skilled. Based on this testimony, the Appeals Referee concluded that petitioner could not return to his past relevant work as a railroad machinist or as a produce handler because his residual functional capacity was for no more than light work. The referee also concluded that petitioner could not return to his past relevant work as a gas station attendant because, although the work was light, the exposure to gasoline fumes and vehicular emissions precluded petitioner from doing the job.
 
 
 6
 The vocational expert also testified that there existed 15,000 jobs in the Detroit metropolitan area and 30,000 jobs in the State of Michigan calling for light and sedentary work at a semi-skilled level. She further testified that only one third of these provided for moderate temperatures and the absence of dust, fumes, and other irritants. Based on this testimony, the Appeals Referee found that there were 5,000 jobs in the Detroit metropolitan area and 10,000 in the State of Michigan which petitioner was capable of performing.
 
 
 7
 The Appeals Referee found that petitioner turned fifty-five in January 1986. He held "that upon the attainment of age fifty-five, considered advanced age under Social Security regulations, the appellant should not be expected or required to make more than a minimal adjustment to another work setting or industry." For this reason, he concluded that petitioner was entitled to annuity benefits beginning July 1, 1986, six months after the first day of the month of his attainment of age fifty-five. See Sec. 5(a) of the Railroad Retirement Act, 45 U.S.C. Sec. 231d(a) (1986).
 
 
 8
 The Appeals Referee denied petitioner's application for disability benefits under the Social Security Act because he found that petitioner was not insured as of January 1986, the date on which his disability began. The Appeals Referee noted that petitioner last worked in the last quarter of 1980. The Social Security Act requires that an individual work not less than twenty quarters during the forty-quarter period which ends with the quarter during which he becomes disabled. 42 U.S.C. Sec. 416(i)(3)(B)(i) (1983). Because petitioner last worked in the final quarter of 1980, and had worked for the twenty preceding quarters, his eligibility ended at the close of the final quarter of 1985, twenty quarters hence.[1] Because petitioner did not become disabled until the first quarter of 1986, the Appeals Referee concluded that he was not eligible for any Social Security benefits whatever.
 
 II.
 
 9
 This court has jurisdiction to review the decision of the Board pursuant to Sec. 8 of the Act, 45 U.S.C. Sec. 231g (1986). Crenshaw v. Railroad Retirement Board, 815 F.2d 1066, 1067 (6th Cir.1987). The Board's decision "is not to be set aside on judicial review if it is supported by substantial evidence in the record and is not based on an error of law." Coker v. Geilow, 806 F.2d 689, 693 (6th Cir.1986), cert. denied, 107 S.Ct. 2483 (1987). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Shelman v. Heckler, 821 F.2d 316, 320 (6th Cir.1987) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In its review of the Board's decision, this court may analogize to Social Security Act statutes, regulations, and decisions addressing the issue of disability. Chandler v. Railroad Retirement Board, 713 F.2d 188, 190 (6th Cir.1983).
 
 
 10
 Petitioner's sole assignment of error relates to the finding of the Appeals Referee that petitioner had the residual functional capacity to perform a limited range of light work. Petitioner correctly observed that the Appeals Referee stated this conclusion without specifically pointing to any of the medical evidence in the record. Nevertheless, a review of the medical evidence in the record reveals substantial support for the Appeals Referee's conclusion. Dr. Thyagarajan was the only physician to make an assessment on the severity of petitioner's respiratory problems. He described them as "moderate." Dr. Patten's description of petitioner's chronic obstructive pulmonary disease as "severe" was based upon an examination made on February 12, 1986. At this time, of course, the Appeals Referee has already ruled that petitioner was disabled. The Appeals Referee's conclusion is buttressed by the testimony of claimant himself at the hearing. He testified that he can lift up to fifty pounds at one time, that he regularly tends the woodburning furnace, that he can walk up and down a staircase consisting of ten steps, and that he helps with the vacuuming around the house. Petitioner did testify that extreme temperatures and gasoline fumes bother him, but the Appeals Referee's hypothetical question to the vocational expert specifically excluded jobs which had these characteristics.
 
 
 11
 Petitioner was unable to point to any medical evidence which indicated that he was unable to do light work. He cited several pulmonary function study readings, but admitted that the only readings which met the listings found in 20 C.F.R. Sec. 404, Subpart P, Appendix 1, Sec. 3.02 (1988) were those taken after January 1, 1986. Thus, they are irrelevant to the question of petitioner's residual functional capacity prior to that date. Petitioner cited nothing else in the record.
 
 III.
 
 12
 Because substantial evidence supports the findings of the Appeals Referee, the decision of the Railroad Retirement Board is AFFIRMED.
 
 
 
 [1]
 The Appeals Referee erroneously calculated petitioner's eligibility to end at the close of the last quarter of 1984. This error was harmless