# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 14, 2016                    Decided June 24, 2016

No. 14-1251

CHRIS STOVIC,
PETITIONER

v.

RAILROAD RETIREMENT BOARD AND SOCIAL SECURITY
ADMINISTRATION,
RESPONDENTS

———

On Petition for Review of a Decision of the Railroad
Retirement Board

———

*Burden H. Walker*, appointed by the court, argued the cause as *amicus curiae* for petitioner. With him on the briefs were *Jonathan D. Hacker* and *Jason Zarrow*.

*Chris Stovic*, pro se, filed the briefs for petitioner.

*Debra Chesnin*, General Attorney, Railroad Retirement Board, argued the cause for respondents. With her on the brief were *Alisa B. Klein*, Attorney, U.S. Department of Justice, *Robert D. Kamenshine*, Attorney, and *Karl T. Blank*, General Counsel, Railroad Retirement Board. *Dana J. Martin*, Attorney, U.S. Department of Justice, entered an appearance.

Before: HENDERSON, ROGERS, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: In 1995, after working in the railroad industry for more than 30 years, Chris Stovic retired. Upon his retirement, Stovic was entitled to retirement benefits under the Railroad Retirement Act. For covered railroad workers, that Act's benefits system in essence substitutes for the Social Security benefits program.

The distribution of retirement benefits under the Act is overseen by the Railroad Retirement Board, a federal government agency within the Executive Branch. In 1996, the Board initially calculated the amount of Stovic's retirement benefits. Not satisfied with that calculation, Stovic pursued a series of administrative appeals. In 1999, the Board issued a final decision confirming its initial calculation. Stovic did not seek judicial review of the Board's 1999 decision within the Act's one-year statute of limitations.

In March 2014, Stovic requested that the Board reopen its 1999 decision concerning the calculation of his retirement benefits. Board regulations allow the Board to reopen initial benefits determinations at any time, under certain circumstances. In this case, the Board promptly denied Stovic's request to reopen.

Stovic has petitioned this Court to review the Board's denial of his request to reopen the 1999 benefits determination. The Board responds first that this Court lacks jurisdiction over Stovic's petition for review. In particular,

the Board argues that the Railroad Retirement Act does not provide for judicial review of Board decisions denying requests to reopen initial benefits determinations. In the alternative, the Board argues on the merits that its decision not to reopen Stovic's initial benefits determination was reasonable.

We conclude that the Railroad Retirement Act grants the Court jurisdiction to review Board decisions denying requests to reopen initial benefits determinations. However, the Board's decision to deny Stovic's request to reopen was reasonable. Therefore, we deny Stovic's petition for review.

I

We must first decide whether this Court possesses jurisdiction over Stovic's petition for review.[1] The Board argues that this Court lacks jurisdiction to review the Board's denial of a request to reopen an initial benefits determination. The courts of appeals are divided on that question. We conclude that the relevant statutory provisions provide for judicial review of Board denials of requests to reopen.

Under the Railroad Retirement Act, courts review decisions of the Board "in the same manner" as they would review Board decisions under the Railroad Unemployment Insurance Act. 45 U.S.C. § 231g. In turn, Section 5(f) of the Railroad Unemployment Insurance Act sets forth the following conditions on judicial review: "*Any claimant*, or any railway labor organization organized in accordance with the provisions of the Railway Labor Act [45 U.S.C. 151 et seq.], of which claimant is a member, or any base-year

---

[1] The Court appointed amicus curiae to present arguments in support of petitioner's position. Amicus has ably discharged his responsibilities.

employer of the claimant, or any other party aggrieved by a final decision under subsection (c) of this section, *may*, only after all administrative remedies within the Board will have been availed of and exhausted, *obtain a review of any final decision of the Board . . . .*" *Id.* § 355(f) (emphases added).

The Board does not dispute that Stovic is a "claimant" who has exhausted "all administrative remedies within the Board."

The key question in this case is whether Stovic is seeking "review of any final decision of the Board." *Id.* The Board says no. But the Board's position does not square with the text of the statute. Section 5(f) provides for judicial review of "*any* final decision of the Board." *Id.* (emphasis added). The Board's denial of Stovic's request to reopen is a "decision of the Board." And that decision is "final." *See Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813, slip op. at 5 (2016) (agency action "final" when it marks "the consummation of the agency's decisionmaking process" and determines legal "rights or obligations") (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Therefore, the text of Section 5(f) provides for this Court's review of the Board's denial of Stovic's request to reopen the Board's 1999 benefits determination.

The Board attempts to end-run that straightforward interpretation of Section 5(f) by reading into the statute an implicit limitation on the kinds of Board decisions that are judicially reviewable. According to the Board, when Congress wrote that any "claimant" may "obtain a review of any final decision of the Board," Congress meant to limit judicial review to only final decisions made "under subsection (c) of this section." Here, the Board's interpretation would allow judicial review only of initial benefits determinations,

not of denied requests to reopen, because Section 5(c) of the Railroad Unemployment Insurance Act primarily encompasses initial benefits determinations. Section 5(c) does *not* encompass Board decisions denying requests to reopen initial benefits determinations. *See* 45 U.S.C. § 355(c).

The Board offers three justifications for tacking that implicit limitation onto the text of Section 5(f). None warrants departure from Section 5(f)'s text.

*First*, the Board points out that Section 5(f) uses the term "final decision" twice – first in setting out one of the four categories of petitioners who may seek judicial review, and second in defining the kinds of decisions subject to review for all the categories of eligible petitioners. *See id.* § 355(f) ("any other party aggrieved by a *final decision* under subsection (c) of this section, may . . . obtain a review of any *final decision* of the Board") (emphases added). According to the Board, because Section 5(f) limits one of the four categories of eligible *petitioners* to parties "aggrieved by a final decision under subsection (c) of this section," the statute's subsequent use of the term "final decision" – which describes the kinds of *decisions* that may be appealed by *any* eligible petitioner – must be similarly limited.

But the Board has it backwards. It is an established principle of statutory interpretation that, when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). That presumption applies with special force in this case given that the term "final decision" is qualified differently *within the same subsection*

of Section 5. Had Congress intended to limit judicial review in Section 5(f) to initial benefits determinations, it could have easily done so by employing the phrase "under subsection (c)" when setting out the kinds of decisions subject to judicial review. But Congress did not do so.

Moreover, Congress granted the Board the power "to establish, by regulations or otherwise, such procedures as it may deem necessary or proper for the determination of a right to benefits." 45 U.S.C. § 355(b). Yet Congress declined to place a limit on what final Board decisions are reviewable. That further suggests that Congress wanted courts to review final decisions flowing from the Board-created procedures.

*Second*, the Board argues that Section 5(f) should be interpreted in the same way as a separate judicial review provision in the Social Security Act, Section 205(g). That section of the Social Security Act provides for judicial review of certain Social Security benefits determinations: "Any individual, *after any final decision of the Secretary made after a hearing to which he was a party*, irrespective of the amount in controversy, *may obtain a review of such decision* by a civil action commenced within sixty days . . . ." 42 U.S.C. § 405(g) (1976) (emphases added). Note that Section 205(g) does not provide for judicial review of "any final decision of the Secretary," but only of "any final decision of the Secretary made after a hearing to which he was a party." As we will explain, that text is critical to understanding why the Board's reliance on Section 205(g) is misplaced.

The Supreme Court has interpreted Section 205(g) to prohibit judicial review of agency refusals to reopen initial determinations of Social Security benefits. *See Califano v. Sanders*, 430 U.S. 99, 107-08 (1977). In reaching that conclusion, the *Sanders* Court emphasized the text of Section

205(g). The Court reasoned that Section 205(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'" *Id.* at 108. Because the Social Security Act does not require a hearing for requests to reopen, the Court held that denials of requests to reopen were not reviewable under Section 205(g). *Id.* The Court went on to note that judicial review of denials of requests to reopen "would frustrate the congressional purpose, plainly evidenced in § 205(g), to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits." *Id.*

Based on the similar purposes of the Social Security Act and the Railroad Retirement Act, the Board here contends that the Supreme Court's decision in *Sanders* applies equally to Section 5(f). As the Board points out, many courts of appeals have agreed with the Board's interpretation of Section 5(f) largely because of *Sanders*. *See Cunningham v. Railroad Retirement Board*, 392 F.3d 567, 573 (3d Cir. 2004); *Harris v. Railroad Retirement Board*, 198 F.3d 139, 142 (4th Cir. 1999); *Roberts v. Railroad Retirement Board*, 346 F.3d 139, 141 (5th Cir. 2003); *Steebe v. Railroad Retirement Board*, 708 F.2d 250, 255 (7th Cir. 1983); *Rivera v. Railroad Retirement Board*, 262 F.3d 1005, 1009 (9th Cir. 2001); *Abbruzzese v. Railroad Retirement Board*, 63 F.3d 972, 974 (10th Cir. 1995).[2]

In our view, however, reliance on *Sanders* disregards the critical textual difference between (i) Section 205(g) of the Social Security Act at issue in *Sanders* and (ii) Section 5(f) of

---

[2] The Second and Eighth Circuits have held that Section 5(f) provides for judicial review of Board decisions denying requests to reopen initial benefits determinations. *See Sones v. Railroad Retirement Board*, 933 F.2d 636, 638 (8th Cir. 1991); *Szostak v. Railroad Retirement Board*, 370 F.2d 253, 254-55 (2d Cir. 1966).

the Railroad Unemployment Insurance Act at issue here. Section 205(g) of the Social Security Act confines judicial review to "review of *such* decision[s]." 42 U.S.C. § 405(g) (1976) (emphasis added). And the word "such" in Section 205(g) refers back to a limited category of decisions: "any final decision of the Secretary made after a hearing." *Id.* The *Sanders* Court relied heavily on the qualifying language in Section 205(g) – "made after a hearing" – in concluding that the statute precludes judicial review of the Secretary's denials of requests to reopen. *Sanders*, 430 U.S. at 108.

By contrast, the text of Section 5(f) of the Railroad Unemployment Insurance Act provides for judicial review of "*any* final decision of the Board," without qualification. 45 U.S.C. § 355(f) (emphasis added). As explained, a Board decision denying a request to reopen falls easily within that broad category. So the result reached by the *Sanders* Court, which was based primarily on the text of Section 205(g), does not apply to the differently and more broadly worded text of Section 5(f).

None of the courts of appeals that have relied on *Sanders* has noted, much less grappled with, that key textual difference between Section 205(g) and Section 5(f). Instead, those courts – relying on the Supreme Court's description of the purpose of Section 205(g) – have reasoned that allowing for judicial review of denials of requests to reopen in this context would similarly "frustrate the goal of ensuring finality of [Board] decisions." *Cunningham*, 392 F.3d at 574; *see also Roberts*, 346 F.3d at 141.

But the *Sanders* Court appealed to the interest in finality only after consulting the text of Section 205(g), and then only in order to point out that the text was consistent with one of the statute's purposes. We highly doubt that the interest in

finality would have controlled in *Sanders* if the Social Security Act had provided without qualification for judicial review of "*any* final decision" of the Secretary. After all, as the Supreme Court has repeatedly stated, "[v]ague notions of a statute's 'basic purpose' are inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651, 661, slip op. at 13 (2016) (ellipsis omitted) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 261 (1993)).

In this case, the text of Section 5(f) speaks precisely to the issue under consideration: A claimant who has exhausted administrative remedies may seek judicial review of "any final decision of the Board." 45 U.S.C. § 355(f). A denial of a request to reopen is a final decision of the Board. Invocations of a general interest in finality cannot overcome the only congressional purpose of which we can be sure – the purpose stated in the text of Section 5(f).[3]

In short, the result in *Sanders* does not control this case for the simple reason that the statute at issue in *Sanders* differs in critical respects from the statute at issue here.

*Third*, the Board repackages its concern about finality as an absurdity argument. In the Board's view, it would be absurd if claimants like Stovic could circumvent the Railroad Retirement Act's one-year statute of limitations simply by filing a request to reopen a prior benefits determination, and then obtaining judicial review of the denied request to reopen. The Board points to Stovic's current appeal – initiated 15

---

[3] In any event, judicial review of denials of requests to reopen serves one key purpose underlying Section 5(f): improving the accuracy of benefits determinations.

years after the Board's initial benefits determination – as a poster child of this potential for vexatious litigation.

Departure from statutory text may be warranted if adherence to the text would lead to a truly absurd outcome. But absurdity is a high bar. The Supreme Court has equated an absurdity with an outcome "so bizarre," "illogical," or "glaringly unjust" that "Congress could not plausibly have intended" that outcome. *Demarest v. Manspeaker*, 498 U.S. 184, 191 (1991); *Conroy v. Aniskoff*, 507 U.S. 511, 516 (1993); *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, Department of Labor*, 519 U.S. 248, 261 (1997); *Mohamad v. Palestinian Authority*, 132 S. Ct. 1702, 1707 (2012); *see also Sturges v. Crowninshield*, 17 U.S. 122, 202-03 (1819) (Marshall, C.J.) (text of statute not disregarded unless case is "one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application").

Here, it is not absurd – indeed, not even close to absurd – to read Section 5(f) to allow judicial review of denied requests to reopen. It makes sense to provide for judicial review of potentially arbitrary and mistaken Board decisions denying requests to reopen. Judicial review helps ensure accuracy and fairness. Moreover, the usual presumption is *in favor of* judicial review of agency action. *See* 5 U.S.C. § 701(a)(1); *see also Sackett v. EPA*, 132 S. Ct. 1367, 1373 (2012) (APA "creates a presumption favoring judicial review of administrative action") (internal quotation marks omitted).

To be sure, allowing judicial review in these kinds of reopener cases might generate some additional litigation. But assuming that the Board does its job when it considers requests to reopen, that added burden seems quite

manageable. Indeed, the Second and Eighth Circuits have long allowed judicial review of denied requests to reopen. The Board has not suggested that any deluge of litigation has occurred in those circuits. Of course, if the added litigation turns out to be significant, Congress can always amend the statute to make it read like Section 205(g) of the Social Security Act – the statutory provision at issue in *Sanders*.

In sum, the text of Section 5(f) grants this Court jurisdiction to review Board decisions denying requests to reopen initial benefits determinations. When "the terms of a statute are unambiguous, judicial inquiry is complete." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642 (1990). So it is here.

## II

Although the Railroad Retirement Act provides for judicial review of Board denials of requests to reopen, the scope of this Court's review is circumscribed. We may overturn the Board's denial of a request to reopen only if the denial is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if it is "unsupported by substantial evidence." 5 U.S.C. § 706(2); *see also* 45 U.S.C. § 355(f) ("The findings of the Board as to the facts, if supported by evidence . . . shall be conclusive.").

Stovic argues that the Board's denial was arbitrary and capricious. The arbitrary and capricious standard usually boils down to the question of whether the agency action at issue was "reasonable and reasonably explained." *Communities for a Better Environment v. EPA*, 748 F.3d 333, 335 (D.C. Cir. 2014). Here, we conclude that the Board reasonably denied Stovic's request to reopen.

In 2014, Stovic submitted a letter requesting that the Board reopen its 1999 decision calculating the amount of Stovic's retirement benefits. Board regulations provide that a "final decision may be reopened" at "any time" under any of 10 conditions. 20 C.F.R. § 261.2(c). Because Stovic was asking the Board to reopen his case rather than challenging an initial benefits determination directly, Stovic had to present evidence establishing that one of those 10 reopener conditions was satisfied.

Although Stovic did not clearly identify which of the 10 conditions justified reopening his case, the Board interpreted Stovic's letter primarily as a request to reopen pursuant to the sixth and seventh conditions of its reopener regulation. Condition six of the regulation provides for reopener to make certain corrections to a decision that determined "the claimant did not have an insured status." *Id.* § 261.2(c)(6). A final decision, for example, could be reopened to "correct an error made in the allocation of earnings to an individual which, if properly allocated, would have given him or her an insured status at the time of the decision." *Id.* § 261.2(c)(6)(ii). Condition seven of the regulation provides for reopener "to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made." *Id.* § 261.2(c)(7).

The Board reasonably concluded and explained that reopener here was inappropriate under either condition. Stovic did not seek to reopen a decision that he "did not have an insured status." *Id.* § 261.2(c)(6). It was therefore reasonable for the Board to conclude that there were no errors in the allocation of Stovic's earnings that, if corrected, would have given him insured status at the time of the decision. And Stovic provided little to no explanation of how his initial decision contained a "clerical error or an error that appears on

the face of the evidence." *Id.* § 261.2(c)(7). Under the circumstances here, the Board's denial of Stovic's request to reopen was eminently reasonable.

\* \* \*

The Railroad Retirement Act grants this Court jurisdiction to review Board denials of requests to reopen initial benefits determinations. But the scope of judicial review in such cases is narrow. Here, the Board did not act unreasonably in denying Stovic's request to reopen. We therefore deny Stovic's petition for review.

*So ordered.*